**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: AFFIRMATIVE INSURANCE HOLDINGS INC., *et al.*, | : | Chapter 11 |
| | : | |
| | : | Case No. 15-12136-CSS |
| Debtors. | : | |
| ―――――――――――――――――――――――――― | : | |
| | | |
| UNITED STATES OF AMERICA, | : | |
| | : | Civ. No. 19-2034-RGA |
| Appellant, | : | |
| v. | : | |
| | : | |
| DON A. BESKRONE, CHAPTER 7 TRUSTEE, | : | |
| | : | |
| Appellee. | : | |

―――――――――――――――――――――――――――――――――――――――――――

## <u>MEMORANDUM OPINION</u>

Richard E. Zuckerman, Esq., Principal Deputy Assistant Attorney General; Christopher J. Williamson, Esq., Ward W. Benson, Esq. (argued), Tax Division, U.S. Department of Justice, Washington, D.C., attorneys for appellant the United States.

Ricardo Palacio, Esq. (argued), Stacy L. Newman, Esq., Ashby & Geddes, P.A, Wilmington, Delaware, attorneys for appellee Don A. Beskrone, Chapter 7 Trustee.

July 27, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This appeal presents an issue of bankruptcy law that does not appear to have been decided by any appellate court. The issue is how to treat the "straddle year" for federal income tax under the current Bankruptcy Code. The Bankruptcy Court ruled that the straddle year should be bifurcated into pre- and post-petition periods; that income tax obligations must be allocated between those two periods; and that income taxes resulting from pre-petition events during the straddle year are accorded general unsecured treatment, while income taxes resulting from post-petition events in that same straddle year are granted administrative priority treatment.

The issue arises because the corporate debtors, Affirmative Insurance Holdings, Inc. and certain affiliates ("Debtors"), filed for bankruptcy in October 2015. Their tax year ended on December 31st, and, in due course, based on the Debtors' tax filing for 2015, the IRS filed an administrative expense priority claim in the bankruptcy cases for approximately $850,000 of taxes, penalties, and interest. It appears that the tax events that gave rise to the tax obligations occurred pre-petition. Thus, the Bankruptcy Court's determination meant that the IRS's claim would be treated as a general unsecured claim, with a low probability of any significant distribution from the estate.

The United States, on behalf of the IRS, has appealed the Order (B.D.I. 811)[1] implementing the accompanying Opinion, *In re Affirmative Insurance Holdings*, *Inc.,* 607 B.R. 175 (Bankr. D. Del. 2019). The United States challenges the Bankruptcy Court's conclusion that a claim for corporate income taxes for the straddle year is only entitled to administrative priority

---

[1] The docket of the Chapter 11 cases, captioned *In re Affirmative Insurance Holdings,* No. 15-12136 (CSS) (Bankr. D. Del.), is cited herein as "B.D.I. __." The Appendix (D.I. 9) filed in support of Appellant's opening brief (D.I. 7) is cited herein as "A__."

to the extent it is attributable to post-petition income.  For the reasons set forth below, I agree with the United States, and I will reverse the Order.

## I.      BACKGROUND

Prior to filing for bankruptcy, the Debtors had sold or otherwise disposed of substantially all of their material assets.  (A049).  On October 14, 2015 ("Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11.  The Bankruptcy Court later entered an order converting the Debtors' cases to cases under Chapter 7 (B.D.I. 337), and, thereafter, Trustee was appointed (B.D.I. 338).

On September 14, 2016, Trustee filed the Debtors' consolidated federal tax return for the 2015 calendar year.  (A023, A050).  The Debtors' full year consolidated taxable income was realized principally from the pre-petition activities.  (A023-24).  Based on their taxable income, the consolidated Debtors had a full tax year obligation of $792,113, plus an estimated penalty of $14,341.  (A024).  The IRS filed a timely administrative expense claim for taxes for the tax year ending 2015.  (A050).  Subsequently, the IRS filed an amended administrative expense claim that amended and superseded the original claim.  (A018).  The IRS Claim is comprised of the following amounts: (i) $792,113.00 (tax due), (ii) $18,566 (interest due), and (iii) $46,025.52 (penalty due).  (*Id.*)  Trustee filed the Claim Objection (B.D.I. 762) seeking entry of an order disallowing administrative expense priority for the IRS Claim and reclassifying the entirety of the IRS Claim as a general unsecured claim.  (A001-30).   The Bankruptcy Court held oral argument, and thereafter issued a comprehensive Opinion that sustained Trustee's objection in part.

The Bankruptcy Court's analysis speaks for itself, but I think it could fairly be summed up as: Pre-BAPCPA,[2] the Third Circuit held that such straddle tax years must be bifurcated into (at the time) priority and unsecured claims; nothing in the plain meaning of the statute or the legislative history of BAPCPA would justify departing from this approach; and administrative priority should be applied only to obligations resulting in or arising from a benefit received after the bankruptcy estate came into existence, "unless Congress gives specific instructions otherwise." *Affirmative*, 607 B.R. at 188.   Applying the bifurcated approach to the issue, the Bankruptcy Court held "that pre-petition events that incur tax liability during 'Straddle Tax Years' are afforded general unsecured status whereas, post-petition events that incur tax liability during those same 'Straddle Tax Years' are afforded administrative priority . . ." *Id*.  The Order thus sustained the Claim Objection in part and granted the United States ninety days to amend its claim and specify whether any of the IRS Claim is allocable to post-petition events.

On October 28, 2019, the United States filed a notice of intent not to amend the IRS Claim, along with its notice of appeal.  (B.D.I. 812, 813).  The appeal is fully briefed.  (D.I. 7, 9, 10, 12).  I heard video oral argument on June 25, 2020.  (D.I. 14).

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction as the appeal is from a final order.  *See* 28 U.S.C. § 158(a)(1). In ruling on the Claim Objection, the Bankruptcy Court conclusively determined the legal question that is the subject of this appeal.  It granted the United States ninety days to amend its claim.  An order resolving a preliminary issue as to priority, but not deciding which portion of the claim is actually entitled to priority, is not a final order.  *See In re Natale*, 295 F.3d 375 (3d Cir. 2002).  The United States filed a notice of intent not to amend its claims.  (B.D.I. 812).  That

---

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

notice rendered the Order final and appealable.  *See Frederico v. Home Depot*, 507 F.3d 188, 192-93 (3d Cir. 2007).

The sole issue on appeal is a legal one.  This Court's review is *de novo.*

## III.   PARTIES' CONTENTIONS

The United States contends on appeal that the Bankruptcy Court reached the wrong result because under applicable non-bankruptcy law – the Internal Revenue Code ("IRC") – a corporation's entire annual income tax accrues on the last day of the tax year.  (D.I. 7 at 4). Because a corporation has only a single tax liability for a tax year, the entire tax is "incurred by the estate" on that day.  (*See id.* at 4-5).  The United States argues that the Bankruptcy Court erred in its failure to consider the language of the IRC in its determination of when federal income tax is incurred.  (*See id*. at 6-10).  The United States further argues that both the Bankruptcy Code and the IRC distinguish income taxes from the sort of transaction- or event-based taxes which were the subject of cases relied on by the Bankruptcy Court.  (*See id.* at 10-15).  The United States further argues that BAPCPA clarified that a tax year cannot be bifurcated.  Finally, the United States argues that the legislative history of § 503 demonstrates that income taxes are incurred at the end of the tax year.

According to Trustee, the Bankruptcy Court reached the correct result in holding that income tax is incurred daily, based on each day's events and transactions, and that a single yearly tax liability must be apportioned between pre-petition and post-petition days, events, and transactions.  Under this view, Trustee argues, any portion of the tax traceable to events or transactions prior to the Petition Date, when no estate yet existed, was not "incurred by the estate."  Moreover, since the tax period did not end prior to the filing of the bankruptcy petition, the tax incurred in the pre-petition portion of the straddle year is not entitled to priority status

either, but rather is only a general unsecured claim, notwithstanding the policy of giving preferential treatment to taxes the government has not had a reasonable time to assess or collect. Trustee argues that a proper analysis of the issue begins and ends with the plain meaning of the "operative statutes," which he contends are §§ 503(b)(1)(B)(i) and 507(a)(8)(A), without reference to the IRC.  (D.I. 10 at 7).  According to Trustee, the distinctions between income taxes and other types of taxes are irrelevant and the determination can be made based on the statutes' plain meaning.  (*Id.* at 10-12).  Such analysis, Trustee argues, is also consistent with the Third Circuit's decision in *Grossman's* – a decision not mentioned in the Opinion – which held that state labels (and, by extension here, federal labels) should not serve as the sole basis to determine when a claim in bankruptcy arises.  (*Id.* at 16 (citing *In re Grossman's, Inc.,* 607 F.3d 114, 120-21 (3d Cir. 2010)).  Trustee argues that *Grossman's* mandates that the IRS Claim (*i.e.*, the right to the payment of taxes on income earned pre-petition) accrued when the income was earned (*i.e.*, at the time of the taxable event such as the pre-petition sale of assets), and that any other holding would undermine Third Circuit law.  (*Id.*)

## IV.   ANALYSIS

Whether the federal income taxes for the full straddle year were "incurred by the estate" is the central issue on appeal.  The United States urges that the answer turns on whether the Bankruptcy Court was required to look to the underlying substantive tax law to determine when the tax accrued.  Trustee urges that the answer turns entirely on when individual transactions or events occurred – pre-petition or post-petition – requiring the pre-BAPCPA bifurcated approach adopted by some courts.  Based on the plain meaning of the statute, I agree with the United States.

### A.        Administrative Expense Priority

The Code sets out ten priorities of expenses and unsecured claims against an estate.  11

U.S.C. § 507(a).  Section 507(a)(2) gives second priority to "administrative expenses allowed

under section 503(b)."  11 U.S.C. § 507(a)(2).  To warrant administrative priority, the straddle

year taxes must satisfy § 503(b)(1)(B), which provides in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> > (1)(B) any tax –
> >
> > > (i) ***incurred by the estate***, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, ***except a tax of a kind specified in section 507(a)(8)*** of this title; or
> > >
> > > (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; …

11 U.S.C. § 503(b)(1)(B) (emphasis added).  Thus, all taxes "incurred by the estate" are

administrative expenses entitled to second priority under § 507(a)(2) with the exception only of

the kind of taxes specified as eighth priority under § 507(a)(8).  *Id.*  Logically, then, Section

503(b)(1)(B)(i) may require consideration of two issues.  First, were the taxes "incurred by the

estate"?  Second, were the taxes entitled to priority under § 507(a)(8)?  With respect to the

second issue, the parties agree with the Bankruptcy Court that the IRS Claim does not relate to

the kind of taxes specified in § 507(a)(8).  (*See* D.I. 7 at 7; D.I. 10 at 9 n.9).  Whether the taxes

were "incurred by the estate" is the sole issue on appeal. [3]

---

[3] The Bankruptcy Court stated  that the United States bears the burden of demonstrating that its claim is an "actual, necessary" expense of preserving the debtor's estate.  *See Affirmative*, 607 B.R. at 180.    As the United States correctly points out (D.I. 7 at 29), the "actual, necessary" language is in § 503(b)(1)(A), not § 503(b)(1)(B).  Thus, I do not think it is part of what the United States has to show.

### B.   Statute's Plain Meaning Under *Hall v. United States*

The Bankruptcy Code does not define "incurred."  However, "incur" has a plain meaning – to "become liable" for.  *Hall v. United States*, 566 U.S. 506, 508, 511-12 (2012).  *Hall* considered the issue of whether a federal income tax liability was dischargeable in a Chapter 12 case.  The Supreme Court noted that "resolution of this case" – like this appeal – "turns on the meaning of a phrase in § 503(b) of the Bankruptcy Code: 'incurred by the estate.'"  *Id.* at 511.  The issue in *Hall* was ***who*** was responsible for certain tax liabilities – the individual debtors or the bankruptcy estate – and the Court in *Hall* did not consider the issue of ***when*** taxes are incurred by the estate.  *Id.* at 512-13.  However, the Supreme Court held, "The phrase 'incurred by the estate' bears a plain and natural reading."  *Id.* at 511.   Namely, to "'incur' one must 'suffer or bring on oneself (a liability or expense).'"  *Id.* at 511-12 (quoting Black's Law Dictionary 836 (9th ed. 2009)); *see also In re Dawes*, 652 F.3d 1236, 1239-40 (10th Cir. 2011) ("one who has 'incurred' an expense is liable for it.").  Thus, "[a] tax 'incurred by the estate' is a tax for which the estate itself is ***liable***."  *Hall*, 566 U.S. at 512 (emphasis added).

While *Hall* is distinguishable on its facts,[4] the Supreme Court's holding that "[t]he phrase 'incurred by the estate' bears a plain and natural reading" remains instructive.  Both parties, however, assert that the plain and natural reading of § 503(b) set forth in *Hall* supports their case.  The United States argues that a determination of when a tax is "incurred by the estate" depends on when the estate "become[s] liable" for the tax, which, the United States argues, in accordance with the underlying substantive law, cannot occur until the last day of the Debtors' tax year.  The United States therefore espouses a "fixed liability" interpretation of *Hall.*  Conversely, Trustee

---

[4]   The Bankruptcy Court distinguished *Hall* on the grounds that it expressly notes "that corporate debtors were treated differently and that the holding was limited to Chapter 12 cases as the bankruptcy code is applied on a chapter-by-chapter basis."  *Affirmative*, 607 B.R. at 188.

argues that, consistent with *Hall*'s explanation, each time a taxable event occurs, the taxpayer "becomes liable" for any tax obligation that may arise as a result thereof, and it matters not that the liability may be contingent, disputed, or unliquidated.  (D.I. 10 at 9-10).

    **C.**    **Underlying Substantive Tax Law Determines When a Tax Is Incurred**

The Bankruptcy Court noted at the outset of its analysis that "[s]tate law determines the date that a tax is incurred."  *Affirmative*, 607 B.R. at 182-83 (citing *Columbia Gas*, 37 F.3d at 984).  This statement is accurate when the tax at issue is a state tax.  The Third Circuit's statement in *Columbia Gas* was, "The determination of when a ***state*** tax is incurred is governed by ***state*** law."  *Columbia Gas*, 37 F.3d at 984 (emphasis added).  It follows that the determination of when a federal tax is incurred is governed by federal law.

The United States argues that, under the IRC, a federal income tax does not become a fixed liability until the last day of the applicable tax period.  (*See* D.I. 7 at 8-10 (citing *In re Earl Gaudio & Son, Inc.*, 2017 WL 377918, at *3-4 (Bankr. C.D. Ill. Jan. 25, 2017) (tax is calculated "at the end of a tax period, when all taxable events occurring during the period and when all deductions and credits … to offset otherwise payable taxes are known")).  Conversely, Trustee urges me to rely on the dictionary definition of "accrue" – "[t]o accumulate periodically; to increase over a period of time."  (*See* D.I. 10 at 13 (citing Black's Law Dictionary (11th ed. 2019)).  According to Trustee, that definition – although not relied upon by the Bankruptcy Court – "is in line with the (correct) view that under the Bankruptcy Code, corporate income taxes accrue – and thus are 'incurred' – on a daily basis as events giving rise to tax liability occur."  (*Id.* at 14).  Trustee asserts that this construction of § 503(b) is also consistent with federal bankruptcy law "in determining when a claim arises for bankruptcy purposes."  (*Id.*; *see also* D.I. 10 at 14-17).  Trustee argues that the approach advocated by the United States would

resurrect *Frenville,* which held that a claim under the Bankruptcy Code arises when the

underlying state law cause of action accrues.  (*Id.* at 16 n.13 (citing *In re Frenville Co.*, 744 F.2d

332, 337 (3d Cir. 1984)).  After much criticism, the Third Circuit overturned its decision in

*Frenville* and adopted a view similar to that of its sister courts.  *Grossman's*, 607 F.3d at 120-21

(determining that a "claim" arises when an individual is exposed pre-petition to a product or

other conduct giving rise to an injury, which underlies a "right to payment" under the

Bankruptcy Code).  "As a result," Trustee argues, "state (or federal) labels should not serve as

the sole basis to determine when a claim in bankruptcy arises."  (D.I. 10 at 16 n.13).  "Using the

proper analysis of a bankruptcy claim, and consistent with the analysis that *Grossman's*

mandates, the IRS Claim (*i.e.*, the right of payment of taxes on income earned pre-petition)

accrued when the income was earned."  (*Id.*)

     As one commentator has noted, "The first test for administrative priority – whether a

claim for taxes on income earned pre-petition in the year of bankruptcy could be considered

'incurred by the estate' – presents a clash between tax policy and bankruptcy policy."[5]

---

[5] Gregory L. Germain, *Taxing Income in the Year of Bankruptcy Under BAPCPA*, 24-Jan. AM.
BANKR. INST. J. 14 (2005).  As Professor Germain explained:

> As a matter of tax policy, income is taxed on the basis of an annual system.
> Because a taxpayer's liability for annual taxes cannot be determined until the year
> is complete, the government's claim for taxes on both pre-petition and post-
> petition income earned in the year of bankruptcy could not arise for tax purposes
> until the end of the tax year — at the earliest.  Because the debtor's tax year will
> always end on or after the date of the bankruptcy petition, the debtor's tax liability
> for the year of bankruptcy would arise under the tax rules post-petition.
>
> On the other hand, bankruptcy policies require treating the pre-petition portion of
> the debtor's tax liability for the year of bankruptcy as a pre-petition claim.  The
> Bankruptcy Code broadly defines a "claim" to include unliquidated, contingent
> and unmatured obligations.  According to the legislative history, Congress
> intended this language to be interpreted in the broadest possible way.  While
> applicable non-bankruptcy law determines ***whether*** a claimant has a substantive

Administrative priority turns on whether and when the tax at issue was "incurred by the estate" – not whether and when a governmental unit's tax claim arose. The Third Circuit has explained that this determination is based on the underlying substantive tax law. The Bankruptcy Court neither mentioned *Grossman's* nor imported the bankruptcy claim analysis espoused by Trustee, and I see no reason to do so either. As the United States notes, § 503(b)(1)(B)(i) is expansive, as it applies to "any tax," which includes income taxes, employment taxes, excise taxes, and property taxes. Under substantive tax law, each type of tax is "incurred" at a different point: (1) federal income taxes are "incurred" at the end of the tax year; (2) employment taxes are incurred when wages are paid; and (3) excise taxes are incurred at the time of an event.[6] Importing the

---

right to payment, **when** a claim arises for bankruptcy purposes is a question of federal bankruptcy law …

*Id.* at 14 (footnotes omitted).

[6] The United States argues on appeal that income taxes are fundamentally different from other taxes which accrue upon the occurrence of certain transactions or events and generally are reported on periodic (*i.e.* quarterly) returns, such as employment and excise taxes, and that the cases cited by the Bankruptcy Court ignored this distinction. (D.I. 7 at 10-15).

For example, the IRC imposes a 7.65% tax on every individual's income from employment and a 7.65% tax on employers on wages paid. IRC §§ 3101 and 3111. While an employer is only required to report these taxes on quarterly or annual returns, Treas. Reg. § 31.6011(a)-1, the taxes are incurred every time wages are paid, not when the tax period ends. Treas. Reg. §§ 31.3101-3, 31.3111-3; *see also* IRC § 4051 (imposing excise tax on each sale of a heavy vehicle, reported on a quarterly return). Similarly, the Bankruptcy Code recognizes the distinction between income taxes which accrue at the end of the year, and taxes which accrue as taxable transactions or events occur. As the United States points out, § 507(a)(8)(A) gives priority to "a tax on or measured by income or gross receipts *for a taxable year ending on or before the [petition date]* – for which a return, if required, is last due [within three years of the petition date]." By contrast, § 507(a)(8)(D) gives priority to "an employment tax *on a wage, salary, or commission … earned from the debtor before the [petition date]*, whether or not actually paid before such date, for which a return is last due … after three years [before the petition date]," and § 507(a)(8)(E) gives priority to "an excise tax on – (i) a transaction occurring before the [petition date] for which a return, if required, is last due … after three years [before the petition date] …" Section 507 thus gives priority to income taxes based on whether the applicable year ends pre-petition, regardless of when taxable events occur but gives priority to employment and excise taxes based on whether taxable events occur prepetition, even if the taxable period ends post-petition.

traditional bankruptcy claims analysis won't work for purposes of § 503(b)(1)(B)(i), as identifying when the action which underlies a "right to payment" occurred will not necessarily comport with a determination of when the tax "accrues and becomes a fixed liability" in accordance with the relevant substantive tax law.

In line with the result of many pre- and post-BAPCPA cases, including the Third Circuit's decision in *Columbia Gas,* I conclude that any determination of whether and when a particular tax was incurred by the estate must be made based on the underlying substantive tax law. *See Dawes*, 652 F.3d at 1239-40 (holding that courts must look to tax law in determining whether a tax has been incurred because "when the [Bankruptcy C]ode hasn't told us otherwise, our attention is rightly turned to the underlying tax law to see who owes what.")

### D.      A Tax Is Incurred When it Accrues and Becomes a Fixed Liability

The parties and the Third Circuit agree that a taxpayer is liable for a tax when the tax accrues.[7]  *See Columbia Gas*, 37 F.3d at 985 ("tax liability is generally 'incurred on the date it accrues, not on the date of assessment or the date on which it is payable") (citation omitted).  As the Bankruptcy Court noted, "most courts considering the issue have found that a tax is incurred

---

Cases concerning transaction-based taxes must be distinguished.  For example, both *In re Goody's LLC*, 508 B.R. 891 (Bankr. D. Del. 2014) and the pre-Bankruptcy Code case *In re Conn. Motor Lines Inc*., 336 F.2d 96 (3d Cir. 1964) dealt with employment taxes on pre-petition wages that came due post-petition – not income taxes.  Unlike income taxes, federal tax law provides that employment taxes accrue as wages are paid.  The Bankruptcy Code recognizes this by treating taxes on wages earned pre-petition as pre-petition claims regardless of when the applicable tax period ends.  I agree that the distinction between income taxes and other taxes which accrue upon the occurrence of certain transactions or events is recognized in both the Bankruptcy Code and IRC and further supports the view that a determination of when a tax accrues and becomes a fixed liability must be made in accordance with applicable tax law.

[7] As the United States correctly points out, the date a federal income tax accrues and the assessment date are not the same.  Assessment usually follows the filing of a tax return several months after the end of the tax year.  Assessment is the determination of liability and the administrative act that allows collection when payment is not made.  *See, e.g.*, IRC § 6201(a)(1); *Bull v. United States*, 295 U.S. 247, 259-60 (1935).

when it accrues and becomes a fixed liability." *Affirmative*, 607 B.R. at 182 (footnote omitted).

The Third Circuit's *Columbia Gas* decision addressed the precise language at issue here. There, the Third Circuit considered property taxes owing under West Virginia law and noted that "[w]hether or not Columbia Gas is entitled to administrative expense priority for the property taxes depends on which date it 'incurred' the property taxes under section 503(b)(1)(B)." *Columbia Gas,* 37 F.3d at 984. The Third Circuit noted:

> Whether a tax has been 'incurred by the estate' is not always easy to determine. The time of assessment or payment may not be equivalent to the time the tax is incurred for the purpose of establishing priority under section 503(b)(1)(B). Rather, the significant fact may be the date the tax accrues.

*Id*. (quoting 3 COLLIER ON BANKRUPTCY ¶ 503.04 at 503-34 (15th ed. 1994)). While "[t]he Bankruptcy Code did not precisely define when a property tax obligation is 'incurred,'… [t]he determination of when a state tax is incurred is governed by state law." *Columbia Gas*, 37 F.3d at 984 (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). Therefore, "[t]he personal property tax obligation in this matter is governed by West Virginia law." *Id.*

West Virginia law required certain businesses to file a return on May 1 of each year based on the value of all property owned in the state the preceding December 31. The state would then assess the tax by the following October. The debtor filed a return by May 1, 1991 and filed for bankruptcy on July 31, 1991. The state assessed the tax several months later. The question before the Court was whether a tax based on property owned pre-petition, but assessed post-petition, was "incurred by the estate." The Third Circuit framed the issue as follows:

> If the property taxes were "incurred by the estate" of Columbia Gas on September 15, 1991, the date of the tentative assessment, the property taxes must be given priority as an administrative expense under section 503. If, however, before Columbia Gas filed its bankruptcy petition the property taxes were incurred in 1990, the period covered by its May 1, 1991 tax return, the property taxes would not be entitled to administrative priority under section 503(b)(1)(B).

*Id.* at 984.  The Third Circuit held that since a tax is incurred when it accrues, the tax at issue was incurred pre-petition.  "The taxes were incurred on the date that the property was owned by Columbia Gas as indicated in its May 1, 1991 tax return covering the year ended December 31, 1990 … The ownership of the property in 1990, the event giving rise to the property tax … occurred before the petition for bankruptcy had been filed.  Based on West Virginia law, we conclude that the property taxes were incurred pre-petition, even though the amount of tax had not yet been determined."  *Id*. at 986.  The Third Circuit noted, "It would not have affected the tax liability of Columbia Gas under West Virginia law if its property in West Virginia had been sold or destroyed after the ownership of the property in 1990 had fixed liability."  *Id*.  The tax therefore was incurred on December 31 based on property owned on that date, which fixed liability.  The Third Circuit's observation that sale or destruction of the property after January 1 would not have affected the liability conforms with the view that a tax is incurred when all events giving rise to it have occurred, thereby making it fixed or inescapably imposed.  *See id*.

Like the state property tax at issue in *Columbia Gas*, whether and when a federal income tax has been incurred must be determined in accordance with underlying substantive law. *Dawes*, 652 F.3d at 1239-40.  I agree with pre- and post-BAPCPA decisions that have looked to the underlying substantive law and applied a similar analysis.  For example, the Bankruptcy Court cited *Marion County Treas. v. Blue Lustre Prods., Inc*., 214 B.R. 188 (S.D. Ind. 1997), which involved a state property tax akin to the one in *Columbia Gas*.  The court there noted, "When a tax is incurred is a determination to be made pursuant to state law."  *Id*. at 189.  The court there "examin[ed] Indiana law to determine the specific date the taxes were incurred," which turned on the inquiry of "when does the tax accrue and become a fixed liability."  *Id.* at 190.  The court noted, "While the assessment date and the date the tax is incurred are not

necessarily the same date, Indiana law indicates that these dates are the same, in that Ind. Code § 6-1.1-2-4 imposes the annual tax liability on the person who is the owner of the property on the assessment date." *Id.* As the property taxes were incurred by Blue Lustre "on the assessment date of March 1, 1994, a full twenty months prior to the date the bankruptcy petition was filed," those taxes were not incurred by the estate. *Id.*

In *FR & S Corp.*, the Bankruptcy Court for the District of Puerto Rico examined the Commonwealth of Puerto Rico Treasury Department's claim that a straddle year tax was a post-petition expense of administration. *In re FR & S Corp.*, 2011 WL 1261329, *1 (Bankr. D. P.R. Mar. 30, 2011). There, the Chapter 7 trustee also argued that because all taxable activity had occurred pre-petition, the estate had incurred no tax. The court turned to local tax law – specifically, the Puerto Rico Internal Revenue Code of 1994 – to determine whether the Commonwealth's tax claim qualified for administrative expense status under § 503(b)(1)(B)(i). Under that law, the *FR&S* court found, the tax was incurred when it accrued on the last day of the tax year – "that is, December 31, 2008."[8]

In *Earl Gaudio*, the Illinois bankruptcy court examined whether business income and liquor taxes for a straddle tax year were "incurred by the estate." *In re Earl Gaudio & Son, Inc.*, 2017 WL 377918 (Bankr. C.D. Ill. Jan. 25, 2017). The *Earl Gaudio* court explained, "State law

---

[8] The *FR & S* court also noted that while pre-BAPCPA jurisprudence allowed bifurcation of a tax year, "The 2005 BAPCPA amendments to Section 507(a)(8)(A) provide that income taxes for the straddle year are entirely post-petition administrative expenses." *Id.* at *5. I do not agree. On this point, I agree with the Bankruptcy Court that such a conclusion simply cannot be drawn from the text of the statute or legislative history. *See Affirmative*, 607 B.R. at 187 ("The Court could not find any legislative history or statutory language allowing for the Straddle Tax Year to be an administrative claim.") However, *FR & S* correctly based its determination of when the tax was incurred on underlying substantive tax law. *See also In re Federated Dep't Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001) (looking to New York law to determine when the tax accrued and became a fixed liability); *In re Garfinckels, Inc.*, 203 B.R. 814, 820-21 (Bankr. D.D.C. 1996) (collecting cases that examined when liability was "inescapably imposed" under state law for purposes of determining when a tax was incurred).

determines the date that a tax is incurred," and "The provisions of the Illinois Income Tax Act, when read together, provide that business income is incurred no earlier than the end of the taxable year, when liability is accrued and fixed or inescapably imposed." *Id*. at *3.

### E. Corporate Income Tax Accrues and Becomes a Fixed Liability at the End of the Applicable Tax Period

Here, the IRC is the substantive law creating and defining the taxes included in the IRS Claim. Based on the plain language of the IRC, a corporation's federal income tax, if any, "accrues and becomes a fixed liability" on the last date of the tax year. The IRC imposes a tax on "taxable income." 26 U.S.C. §§ 1(a), 11(a) ("A tax is hereby imposed for each taxable year on the taxable income of every corporation."). "[T]axable income" is gross income, which is "all income from whatever source derived," IRC § 61(a), minus allowable deductions. IRC § 63(a). It is only on the last day of the taxable year that all events giving rise to an income tax have occurred (both these creating income and those creating deductions). *See* Treas. Reg. 1.11-1(e) (providing an example of computation of liability). A corporation's income tax thus does not become "a fixed liability" or "inescapably imposed" until that day – December 31 for calendar year taxpayers like the Debtors. IRC § 441(b)(1). Until midnight on December 31, a corporation can still, for example, incur operating expenses or make charitable donations that will eliminate any liability that would otherwise arise from income earned during the preceding twelve months. It is only after that moment that the corporation's income tax liability – if any – become fixed and inescapably imposed.

Trustee argues that none of these IRC provisions compel the outcome that the IRS seeks. Trustee argues that the IRC does not define the terms "incurred" or "accrued" and does not address the classification or prioritization of the taxes at issue. According to Trustee, the fact that the amount of income tax due may change up until the last minute of the tax year is of no

moment and does not necessarily mean that the tax is "incurred" at that point.  (D.I. 10 at 21).

Trustee is correct that the IRC does not define the terms "incurred" or "accrued" and does not address the classification or prioritization of the taxes at issue.  However, Trustee's contention that the income tax at issue here was incurred prior to the end of the 2015 tax year is incorrect because the IRC imposes a tax for an entire year, not individual events.  *See* 26 U.S.C. § 11.  Corporate income tax liability is determined by, in part, netting all the year's income with all the year's deductible expenses, then applying the applicable tax rate.  *See* Treas. Reg. § 1.11-1(e).  That computation is based on the sum of information at the end of the tax year.  *Id.*; 26 U.S.C. § 441(a) ("Taxable income shall be computed on the basis of the taxpayer's taxable year.")  Applying these provisions, Debtors' 2015 taxable income could only be calculated at the end of its taxable year after all income and deductions from income are known.  Said differently, until December 31, 2015, Debtors did not have taxable income because not all possible events had occurred.  While a major source of income came from a June 30, 2015 sale, before the October 14, 2015 petition date, it is irrelevant whether that income was recognized on one day during the year or on 365 separate days, because the IRC considers aggregate amounts, not individual income events or deductions, during the year.  Under the substantive tax law, the Debtors' income became taxable income only after determining all income and deductions for the taxable year, at which point the tax accrued and became a fixed liability.

Trustee further argues that applying the United States' "fixed liability" interpretation of *Hall* to corporate debtors in Chapter 11 would lead to an "absurd result" which would "gut the Bankruptcy Code."  (*See* D.I. 10 at 10).  According to Trustee, "if the dispositive factor in the IRS' analysis of when a tax is 'incurred' turns on a[] fixed or inescapable liability, then the estate would be liable for *all* taxes of the Debtors – both pre-petition and post-petition – and elevate all

of those taxes to administrative expense priority treatment." (*Id.* at 18-19). For the reasons cited

by the United States, I disagree. (*See* D.I. 12 at 14-15 (explaining that, pursuant to §

507(a)(8)(A), taxes for years ending on or before the petition date are not accorded

administrative expense treatment)).

### F.    No Exception to the Plain Meaning Rule Applies

The United States argues that post-BAPCPA decisions agree that the intended effect of

the 2005 amendments was to make the so-called straddle year taxes entirely post-petition claims.

(D.I. 7 at 22 (citing *Earl Gaudio*, 2017 WL 377918, at *3-5; *In re FR & S Corp.*, 2011 WL

1261329, at *5 (Bankr. D.P.R. Mar. 30, 2011)). The United States argues that it is not aware of

any contrary post-BAPCPA decisions except for the one in this case.[9] The United States further

argues that legislative history shows that Congress understood that income taxes are "incurred"

on the last day of the tax year, while other types of taxes are incurred on an event or transaction

basis.[10] Conversely, Trustee argues that I must reject any invitation to consider legislative

---

[9] *In re TelexFree,* 2020 WL 1659472, at *11 (Bankr. D. Mass. Mar. 26, 2020), issued after
briefing in this appeal concluded, adopts the Bankruptcy Court's analysis.

[10] The United States argues that in *Pac.-Atl. Trading Co.*, the Ninth Circuit extensively reviewed
the legislative history of the Bankruptcy Act of 1978 and looked in particular to floor statements
by the sponsors of the House and Senate bills stating that "… for purposes of the priority rules, a
tax on income for a particular period is to be considered 'incurred' on the last day of the period.
A tax on or measured by some event, such as payment of wages or a transfer by reason of death
or gift, or an excise tax on a sale or other transaction is to be considered 'incurred' on the date of
the transaction or event." *In re Pac.-Atl. Trading Co.*, 64 F.3d 1292, 1299-1300 (9th Cir. 1995).
The *Pac.-Atl. Trading* court concluded, "The pertinent legislative history clearly demonstrates
that the drafters of § 503(b)(1)(B)(i) intended that a tax on income should be treated as 'incurred'
on the last day of the taxable period." *Id.* According to the United States, the Bankruptcy Court
did not address the Ninth Circuit's analysis and instead relied on an earlier bankruptcy court
opinion which cited the Senate report's statement that "[i]n general, administrative expenses
include taxes which the trustee bears in administering the debtor's estate, including taxes on
capital gains from sales of property by the trustee and taxes on income earned by the estate
during the case." *Affirmative*, 607 B.R. at 184-85 (citing *In re O.P.M. Leasing*, 68 B.R. 979, 984
(Bankr. S.D.N.Y. 1987)). The United States argues that the floor statements it cites are more
authoritative since they were made after the Senate report and address the specific question at

history in its analysis.  According to Trustee, "The Court's analysis must end with the statute's

unambiguous plain language unless one of two narrow exceptions applies – one premised on

absurdity and the other on legislative intent."  (D.I. 10 at 22 (citing *Dunn v. Commodity Futures*

*Trading Comm'n*, 519 U.S. 465, 470 (1997)).  "[A] court must give effect to a statute's

unambiguous plain language 'unless it produces a result demonstrably at odds with the intentions

of its drafters … or an outcome so bizarre that Congress could not have intended it.'"  *In re*

*Visteon Corp.*, 612 F.3d 210, 213 (3d Cir. 2010) (quoting *Mitchell v. Horn*, 318 F.3d 523, 535

(3d Cir. 2003)).

   The first exception does not apply.  The application of the statutory language does not

"result [] in an outcome that can truly be characterized as absurd, *i.e.*, that is so gross as to shock

the general moral or common sense."  *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir.

2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) (internal quotation

marks omitted).  That the pre-petition portion of the income tax at issue would be neither a

priority claim nor an administrative claim does not render the result absurd.

   Nor does the second exception apply.  "[T]he Supreme Court has recognized a narrow

exception to the plain meaning rule in the 'rare cases [where] the literal application of a statute

will produce a result demonstrably at odds with the intentions of its drafters.'"  *In re*

*Philadelphia Newspapers, LLC,* 599 F.3d 298, 314 (3d Cir. 2010) (quoting *United States v. Ron*

---

issue here – when an income tax is incurred for purposes of priority.  In disregarding the floor
statements and instead relying on the earlier, less specific statement in the Senate report, the
United States argues, both the Bankruptcy Court and the *O.P.M. Leasing* court misconstrued
legislative history.  Finally, the United States argues that the Bankruptcy Court drew the wrong
conclusion from the absence in BAPCPA's legislative history of any reference to the straddle tax
year.  In contrast to the legislative history of the 1978 Code, the legislative history of BAPCPA
is of "dubious assistance" on any issue, as there was neither a conference committee statement
nor a floor manager report, and the House Judiciary Report "often contains a mere recitation of
the eventually enacted statutory text and adds little, if any, assistance to the court's efforts in
determining congress's intent."  *In re Sorrell*, 359 B.R. 167, 176 (Bankr. S.D. Ohio 2007).

*Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).  As the Third Circuit has observed, "The [second]

exception to [the plain language] rule is narrowly cast.  'Generally, where the text of a statute is

unambiguous, the statute should be enforced as written and only the most extraordinary showing

of contrary intentions in the legislative history will justify a departure from that language.'"

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 (3d Cir. 2011) (quoting *Philadelphia*

*Newspapers,* 599 F.3d at 314).

The Bankruptcy Court noted, "BAPCPA had a real and substantial effect of creating a

priority claim for tax years that ended on or before the petition date.  In no way would this

Court's refusal to accept that the pre-petition portion of the Straddle Tax as an administrative

claim, create an ambiguity with Congress' intention in BAPCPA regarding priority claims for tax

years ending on or before the petition date."[11]  *Affirmative*, 607 B.R. at 185.  The United States

disagrees, arguing that the Bankruptcy Code has always given preferential treatment to taxes the

government has not had a reasonable time to assess or collect, as the taxing authority is an

---

[11] As noted by the Bankruptcy Court, confusion followed BAPCPA's enactment.  "The amendment to § 507(a)(8) contained in the BAPCPA seems to be intended to follow the government's position on this issue and to overrule the bifurcation cases, although the technical draftsmanship of the amendment may have left something to be desired."  Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 79 AM. BANKR. L.J. 893, 898 (2005) (footnote omitted); *see also* 11 COLLIER ON BANKRUPTCY ¶ TX 1.05[5][a] (Richard Levin & Henry J. Sommer eds., 16th ed.) (noting that while several U.S. Bankruptcy Court panels have held that straddle year "must be bifurcated into a pre-petition component and an administrative expense component, notwithstanding that the filing of the petition does not terminate the corporate debtor's taxable year," "BAPCPA amend[ed] section 507(a)(8) governing the priority of taxes to provide that income and gross receipt taxes for Straddle Years are post-petition administrative expense claims that must be paid in full in the ordinary course … ").  Other commentators have noted that Congress's failure "to amend § 503(b)(1)(B) to make clear that pre-petition Straddle Year taxes are 'incurred by the estate' leaves open the bizarre and unintended possibility that such taxes are neither pre-petition priority claims nor administrative period claims."  *Jenks,* 79 AM. BANKR. L.J. at 913 n.34 (citing Carl M. Jenks, Candace A. Ridgway & Edward A. Purnell, 790 T.M. Corporate Bankruptcy A-38 to A-39 (2004)); *see also* Gregory L. Germain, *Taxing Income in the Year of Bankruptcy Under BAPCPA*, 24-Jan. AM. BANKR. INST. J. 14 (2005) (concluding same).

involuntary creditor.  (*See* D.I. 7 at 23-24 (citing 4 COLLIER ON BANKRUPTCY P. 507.11[1][b] (16th ed. 2018)).  Since the Debtors' straddle tax year ended after the Petition Date, the IRS had no opportunity to collect the tax prepetition, as any such tax by definition cannot come due until after the Petition Date.  Under the Bankruptcy Court's interpretation, however, the pre-petition portion of the tax due for the straddle year is treated worse than pre-petition tax claims for years that ended prior to the bankruptcy filing.  That result, the United States argues, is antithetical to the Bankruptcy Code's policy of giving priority to tax claims that the government has not had a reasonable opportunity to collect.  "Given the rationale for granting priority to tax years ending prepetition, it is implausible that Congress instead wanted the prepetition portion of a tax year ending post-petition to be further demoted to general unsecured status."  (D.I. 7 at 24).

While the United States' argument makes sense, I must nevertheless agree with the Bankruptcy Court.  There is simply no legislative history to support the United States' reading that by eliminating eighth priority status in BAPCPA, Congress intended to make straddle-year taxes entirely post-petition claims.  The scant BAPCPA legislative history makes no mention of the reason for the amendment to § 507(a)(8) or the treatment of straddle-year taxes.  "It is unfortunate that there exists virtually no real legislative history for the detailed provisions of BAPCPA."  *In re Seafort*, 669 F.3d 662, 674 n.8 (6th Cir. 2012) (internal quotation marks omitted).  Thus, I simply cannot conclude that "application of a statute will produce a result demonstrably at odds with the intentions of its drafters."

## V.    CONCLUSION

I agree with the Bankruptcy Court that there is no statutory language or legislative history to support the United States' contention that the BAPCPA amendments to § 507(a)(8)(A) expressly provided that income taxes for the straddle year are entirely post-petition

administrative expenses.  However, in line with the Third Circuit's analysis in *Columbia Gas*, a court should look to underlying substantive tax law to determine whether and when taxes are "incurred by the estate" for purposes of § 503(b)(1)(B).  Based on the IRC, corporate federal income tax liability accrues and becomes a fixed liability on the last day of the tax period – here, December 31, 2015.  Accordingly, the tax at issue in the IRS Claim was incurred by the estate post-petition and should be entitled to priority as an administrative expense.

For the reasons set forth herein, the Order is reversed.  A separate order will be entered.